UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ERIC LAMAR FIELDS, JR.,                                                      Plaintiff,

v.                                    Civil Action No. 3:16-cv-100-DJH-CHL

CARDINAL HEALTH and
MICHAEL SHAW,                                                Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Eric Lamar Fields, Jr., was fired from his job at Cardinal Health after a two-day absence from work. When he requested the time off, Fields told Cardinal Health that he would be taking his partner to medical appointments on those days, and his request was approved on that basis. Cardinal Health now maintains that Fields used the time for vacation instead and that he was fired for falsifying the reason underlying his leave request. Fields, however, claims that he was terminated because of his race and gender. He sued Cardinal Health and its employee who fired him, Michael Shaw. (Docket No. 1-2) Cardinal Health filed a motion to dismiss on judicial-estoppel grounds, arguing that Fields improperly failed to disclose his discrimination claims when he sought bankruptcy protection in April 2016. (D.N. 18) It has since moved for summary judgment. (D.N. 29) Because Fields has not demonstrated a genuine dispute of material fact as to any of his remaining claims, the motion for summary judgment will be granted.

**I.**

Fields began working as a customer-service representative at Cardinal Health's call center in 2006. (D.N. 28-1, PageID # 296) He requested, and was granted, several days of leave from work in connection with his partner's January 2014 gastric-bypass surgery. (D.N. 29-3, PageID # 496-97) At issue in this lawsuit are Thursday, April 3, and Friday, April 4, 2014, for

1

which Fields was granted leave to take his partner to appointments with a surgeon and a nutritionist. Fields had originally requested vacation for the entire week of March 31, 2014, but the request was denied as to April 3 and 4 because a number of other employees were already scheduled for vacation on those days. (D.N. 29-2, PageID # 491) His vacation request was approved for March 31 through April 2. (*Id.*)

After Fields returned to work, one of his coworkers reported seeing a Facebook post that indicated he had actually been vacationing in Florida on April 3 and 4.[1] (*Id.*, PageID # 491-92) When confronted on April 8 by Defendant Michael Shaw, a Cardinal Health human-resources manager, Fields said he could get doctors' notes to verify the appointments. (*Id.*, PageID # 492) Pursuant to Cardinal Health's attendance policy, Fields was given two days to provide the notes. (*Id.*) However, he did not provide any documentation until April 14, when he offered a note from Norton Healthcare in support of the April 3 absence. (D.N. 29-3, PageID # 498) He told Emily Bock, a member of Cardinal Health's leave-management team, that the April 4 appointment was with Dr. Ahmed, a general practitioner. (*Id.*; *see id.*, PageID # 496) Fields had requested leave on April 4 for an appointment with a nutritionist, not with Dr. Ahmed. (*Id.*, PageID # 498)

On April 22, Bock and Shaw spoke with Fields, who still had not provided a doctor's note for the April 4 appointment. (*Id.*) Bock offered to help by contacting Dr. Ahmed's office; Fields did not object to that suggestion. (*Id.*; *see* D.N. 28-1, PageID # 323-24) Dr. Ahmed's office informed Bock that Fields's partner did not have an appointment on April 4, 2014, and was not seen on that date. (D.N. 29-3, PageID # 499) Bock and Shaw again confronted Fields,

---

[1] On Tuesday of that week, Fields's adult son, Jonahh Fields-Wright, posted from Celebration, Florida, "Having a good time in Florida! Don't want Friday to come!!!" (D.N. 28-2, PageID # 413) Fields was tagged in that post. (*See id.*) At 9:35 p.m. on Friday, Fields-Wright commented on the post, "Lol Im staying in Atlanta." (*Id.*, PageID # 414)

2

who explained that "sometimes he just drops [his partner] off to get a prescription and he might not have had an actual appointment and that was why the doctor's office had no record of it." (D.N. 29-2, PageID # 492)  Shaw placed Fields on suspension.  (*Id.*, PageID # 493; D.N. 28-1, PageID # 324-25)  On April 29, he called Fields to terminate Fields's employment.  (D.N. 29-2, PageID # 493; D.N. 28-1, PageID # 326)

Prior to his termination, Fields never told Shaw, Bock, his supervisor Paula Harris, or anyone else at Cardinal Health that he felt he was being targeted on the basis of his race or gender.  (D.N. 28-1, PageID # 319)  He did "vent a little bit" about the leave situation to Jessica, an administrative assistant in human resources whom he considered a friend, but he assured her that he did not want to make a discrimination complaint.[2]  (*Id.*, PageID # 321; *see id.*, PageID # 319-21)  He does not know whether Jessica shared what he told her with anyone else at Cardinal Health.  (*Id.*, PageID # 321)

Fields sued Shaw and Cardinal Health in Hardin Circuit Court, alleging racial discrimination, discrimination based on familial status, and gender discrimination under the Kentucky Civil Rights Act; retaliation under the KCRA and the Family and Medical Leave Act; promissory estoppel; and negligent hiring, supervision, or retention.  (D.N. 1-2)  The case was removed to this Court.  (D.N. 1)  The Court dismissed the claims of discrimination based on familial status (Count II), promissory estoppel (Count IV), and negligent hiring, retention, or supervision (Count V) after Fields conceded that dismissal of those claims was appropriate. (D.N. 16; *see* D.N. 15)  In his response to the motion for summary judgment, Fields further concedes that his FMLA retaliation claim (Count VI) is unsupported by the evidence.  (*See* D.N.

---

[2] The record is unclear as to whether Jessica's last name is Bailey or Davidow.  (*See* D.N. 28-1, PageID # 330)

32, PageID # 529) Thus, the Court's analysis will be limited to the claims of race and gender discrimination (Counts I and III) and retaliation (Counts VI and VII).

**II.**

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

**A.     Race and Reverse Gender Discrimination**

In his complaint, Fields alleged that white customer-service representatives at Cardinal Health were treated more favorably than black customer-service representatives. (D.N. 1-2, PageID # 17-19) Specifically, he alleged that (1) Harris, his immediate supervisor, "worked around attendance and disciplinary policies" so as to prevent white employees "from accruing any 'occurrences' for unexcused absences"; (2) "Caucasian employees were almost always

4

selected over minorities to attend seminars, vendor fairs, [and] company lunches" and to "participate in special projects"; (3) white employees "were allowed to use their personal phones on [sic] while at work to resolve personal issues with no consequences"; and (4) "Caucasian employees faced no issues from Defendant Shaw, or others at Defendant Cardinal, when requesting to use FMLA leave[] or other forms of time[]off." (*Id.*, PageID # 18 ¶ 83)  Fields further claimed that Cardinal "steadily (and intentionally) reduced the number of African-Americans working at its call center" during his eight years there; that "only African-American (and other minority) supervisors and employees would be terminated" when reductions in force occurred; and that only 20 of the 500 employees working at the call center when Fields was terminated were minorities. (*Id.*, PageID # 19)

As to his gender-discrimination claim, Fields alleged that women received more favorable treatment at Cardinal Health than men did. (*Id.*, PageID # 20-22)  He asserted that "females accounted for approximately eighty-seven percent . . . of the 500 employees working at Defendant Cardinal's call center, and held the greater majority of supervisor positions." (*Id.*, PageID # 21 ¶ 102)  He then cited the same examples of allegedly preferential treatment as in his race-discrimination claim. (*Compare id.* ¶ 105 *with id.*, PageID # 18 ¶ 83)

Claims of race and gender discrimination (or in this case, reverse gender discrimination) under the Kentucky Civil Rights Act are analyzed using the same burden-shifting framework applicable to federal discrimination claims. *White v. Duke Energy Ky., Inc.*, 603 F. App'x 442, 450 (6th Cir. 2015); *see also Meads v. Lexington-Fayette Urban Cty. Gov't*, No. 15-5310, 2016 U.S. App. LEXIS 23776, at *13 (6th Cir. Jan. 20, 2016).  Thus, Fields must first establish a prima facie case of discrimination; Cardinal Health must then articulate a legitimate nondiscriminatory reason for his termination; and finally, Fields must demonstrate that the

5

proffered reason is pretextual.  *See White*, 603 F. App'x at 446.  Fields has failed to make the necessary showing.

To establish a prima facie case of race discrimination, Fields must "present evidence that: (1) he was a member of a protected class"; (2) "he suffered an adverse employment action"; (3) "he was professionally qualified for the position he held at the time of the action"; and (4) "he was either replaced by a person from outside the protected class or was treated differently from similarly situated employees outside the protected class."  *Id.* at 446 (citing *Clayton v. Meijer, Inc.*, 281 F.3d 605, 607, 610 (6th Cir. 2002)).  The first three elements are undisputed here, and Fields does not contend that he was replaced by someone who is not African-American.  Thus, his prima facie case of race discrimination turns on whether there is evidence that he was "treated differently from similarly situated employees outside the protected class."  *Id.*

For claims of reverse gender discrimination, the first and fourth prongs of the prima facie test are modified.  *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 569 (citing *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004)).  Instead of membership in a protected class, Fields "must demonstrate background circumstances [to] support the suspicion that [Cardinal Health] is that unusual employer who discriminates against the majority."  *Id.* (first alteration in original) (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003)).  For the fourth prong, he must show that Cardinal Health "treated differently employees who were similarly situated but were not members of the protected class."  *Id.* (quoting *Sutherland*, 344 F.3d at 614).  Again, differential treatment of similarly situated employees is an essential element.  *Cf. White*, 603 F. App'x at 446.

Fields asserts that he has overcome the prima facie hurdle by "stat[ing]" that white female employees "had more favorable terms and conditions of employment" at Cardinal Health,

6

including "being excused from attendance and disciplinary policies[ and] being selected to attend seminars, vendor fairs, company lunches, and special projects." (D.N. 32, PageID # 525) In support, he cites the "Verified Complaint." (*Id.*) The Court, like Cardinal Health, questions whether the complaint is truly verified such that it may be treated as an affidavit for summary-judgment purposes.[3] *See ACLU v. Grayson Cty.*, 591 F.3d 837, 844 n.2 (6th Cir. 2010) ("A verified complaint 'carries the same weight as would an affidavit for the purposes of summary judgment.'" (quoting *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008)). In any event, the allegations cited by Fields do not establish that similarly situated white or female employees were treated more favorably than he was.

To qualify as "similarly situated," the employees identified by Fields must be similar to him "in all of the relevant aspects." *Seay v. TVA*, 339 F.3d 454, 480 (internal quotation marks omitted) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Relevant aspects include the nature of the conduct for which the plaintiff was disciplined—here, falsifying a leave request, or in a broader sense, dishonesty. *See id.* at 479 ("[S]imilarly-situated employees ordinarily 'must . . . have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992))). Being selected for seminars, lunches, and special projects or allowed to use one's personal phone at work has nothing to do with the conduct for which Fields was purportedly terminated. (*See* D.N. 32, PageID # 525) His vague assertions that white or female employees "faced no issues" when seeking leave, and that his supervisor "worked around attendance and

---

[3] Fields did not declare "under penalty of perjury" that the complaint was "true and correct." 28 U.S.C. § 1746(2). (*See* D.N. 1-2, PageID # 28) Moreover, the signature page indicates that Fields signed the complaint in Jefferson County, Kentucky, but that it was notarized in Fulton County, Georgia. (*See id.*)

7

disciplinary policies" to cover up those employees' unexcused absences, are likewise irrelevant—Fields does not contend that he was wrongly denied leave, and his absences on April 3 and 4 were excused. (D.N. 1-2, PageID # 18 ¶ 83, PageID # 21 ¶ 105; *see* D.N. 29-3, PageID # 497)  There is no suggestion in the complaint that white or female employees were allowed to take time off from work based on falsified leave requests without repercussions. (*See generally* D.N. 1-2)

Indeed, Fields testified at his deposition that he could not identify any other Cardinal Health employee who was suspected of falsifying a leave request but not disciplined. (D.N. 28-1, PageID # 327)  Nor was he able to name employees who were believed to have engaged in any other dishonest behavior in violation of Cardinal Health's standards of conduct. (*Id.*, PageID # 329; *see* D.N. 29-2, PageID # 491 ¶ 2 (explaining that "[t]he very first standard of business conduct" governing Cardinal Health employees "required every employee to act with integrity" and that "[f]alsifying documents or providing false information violated Cardinal Health's standards of business conduct and was grounds for immediate termination"))  In sum, Fields has failed to show that he was treated differently than similarly situated white or female employees, and he thus cannot establish a prima facie case of race discrimination or reverse gender discrimination.  *See White*, 603 F. App'x at 446; *Simpson*, 359 F. App'x at 569.

Even if Fields could make the necessary prima facie showing, his discrimination claims would fail at the final stage of the burden-shifting analysis.  Cardinal Health has articulated a legitimate non-discriminatory reason for his termination, namely that it believed he had lied about his reason for requesting time off on April 3 and 4. (*See* D.N. 29-2)  To show that this reason was pretextual, Fields must establish that it (1) "had no basis in fact," (2) "did not actually

8

motivate" his firing, or (3) "was insufficient to explain" his firing. *Simpson*, 359 F. App'x at 569 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

A showing of insufficiency may overlap with the "similarly situated" prong of the prima facie case; pretext may be established by "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 676 (6th Cir. 2008) (quoting *Manzer*, 29 F.3d at 1084). As discussed above, Fields has offered no such evidence. Moreover, he acknowledged at his deposition that lying about medical appointments to extend one's vacation was a terminable offense. (D.N. 28-1, PageID # 314)

Fields's deposition testimony likewise disproves any assertion that the given reason was not Cardinal Health's true motivation: Fields testified that he thought Shaw believed he had falsified his leave request (*id.*, PageID # 300), and he agreed that he was fired because Cardinal Health "thought [he] had misrepresented or falsified his absence." (*Id.*, PageID # 326; *see id.*, PageID # 327 ("Correct, yes.")) Finally, the stated reason does not lack a factual basis, as Cardinal Health has provided ample evidence supporting it. Shaw stated in his declaration that he concluded Fields had lied

> after (1) reviewing the information received from [Fields's] co-worker, including the Facebook posts from his son which indicated they were in Florida until April 4 and staying in Georgia (presumably on the way home from Florida) on April 4; (2) several conversations with Mr. Fields in which he did not deny being with his son on vacation and made no attempt to explain the discrepancy between his son's Facebook posts and his representations to [Cardinal Health] . . . ; (3) Mr. Fields failed to present a doctor's note for his absence on April 4 or offer a reasonable explanation as to why he could not; (4) learning from Emily Bock that the doctor's office denied that Mr. Fields's partner was seen on April 4; and (5) listening to Mr. Fields's final explanation that maybe he had just dropped his partner off at the doctor to pick up a prescription as an explanation for why the doctor's office did not have [any] record of the appointment. In addition to the

> above, I considered the fact that he had originally requested the time as vacation. I also understand that the doctor Mr. Fields claimed they went to see was a general practitioner, not the nutritionist which was the original explanation for the absence.

(D.N. 29-2, PageID # 493) Thus, summary judgment is warranted on Fields's discrimination claims for the additional reason that he has failed to establish pretext. *See White*, 603 F. App'x at 446.

**B.    Retaliation**

To avoid summary judgment on his retaliation claims, Fields must make a prima facie showing that (1) he engaged in activity protected under the KCRA; (2) Cardinal Health knew of the protected activity; (3) Cardinal Health subsequently took an adverse employment action against him; and (4) "there was a causal connection between [Fields's] protected activity and the adverse employment action." *Stevens v. St. Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 631 (6th Cir. 2013) (citing *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008); *Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004)). To establish the necessary causal connection, a plaintiff must present proof that "the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made." *Brooks*, 132 S.W.3d at 804. In this case, there is no evidence that Cardinal Health was aware of any protected activity by Fields when it fired him.

Fields asserts in his response brief that he "engaged in protected activity every time he complained of the racial and gender harassment he was being forced to endure at Cardinal [Health]." (D.N. 32, PageID # 529) He claims that he "complained directly to Mr. Shaw, Ms. Bock, Ms. Harris and Ms. Bailey." (*Id.*) These assertions are not accompanied by a citation to the record, however, and the fact section of Fields's brief misrepresents his deposition testimony: he did not testify that he complained to Bock about being targeted on the basis of his race or

10

gender, but rather "based on what someone reported to HR with no proof." (D.N. 28-1, PageID # 316; *see* D.N. 28-2, PageID # 416 (email to Bock)) Nor does the record reflect that Jessica was a "supervisor" of any kind. (D.N. 32, PageID # 520) To the contrary, Fields described her as an administrative assistant and friend (D.N. 28-1, PageID # 319-21); he testified that he was merely "vent[ing]" to her and did not wish to make a formal complaint of discrimination. (*Id.*, PageID # 321)

Fields also testified that Jessica was the only Cardinal Health employee to whom he spoke about discrimination.[4] (*Id.*, PageID # 319) He did not know whether she had mentioned the conversation to anyone else. (*Id.*, PageID # 321) Thus, even if Fields's comments to Jessica could be construed as a discrimination complaint, there is no evidence that Shaw or any other Cardinal Health employee with decision-making authority was aware of it. The retaliation claims therefore fail on this ground as well. *See Stevens*, 533 F. App'x at 631; *Brooks*, 132 S.W.3d at 804.

**C.     Michael Shaw**

Shaw was apparently never served with the complaint in this matter (*see* D.N. 29-1, PageID # 476 n.1) and thus has not moved for summary judgment. Cardinal Health, however, asserts that Fields's claims against Shaw "should be dismissed for all the reasons that they should be dismissed against Cardinal Health." (*Id.*) Fields responded to Cardinal Health's summary-judgment motion as though it applied to both defendants. (*See* D.N. 32, PageID # 518)

The Court may grant summary judgment sua sponte provided that "the losing party was on notice that he had to muster the necessary facts to withstand summary judgment, lest he face

---

[4] To the extent this testimony is inconsistent with the allegations of Fields's complaint, the Court "credit[s] his later testimony." *Leary v. Livingston Cty.*, 528 F.3d 438, 444 (6th Cir. 2008) (citations omitted) ("A claimant may not create a triable issue of fact by saying one thing in a complaint and something else in a deposition.").

the dismissal of his claims." *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 959-60 (6th Cir. 2007) (citing *Celotex*, 477 U.S. at 326; *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005)); *see also Bailey v. City of Howell*, 643 F. App'x 589, 600 (6th Cir. 2016) ("[A] district court may enter summary judgment sua sponte if the losing party is 'afforded notice and reasonable opportunity to respond to all the issues to be considered by the court.'" (quoting *Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 931 (6th Cir. 2000))). Here, because the same claims and facts apply to both Shaw and Cardinal Health, Fields was on notice that his claims were subject to summary judgment, and he had sufficient chance to come forward with evidence to support those claims. (*See, e.g.*, D.N. 1-2, PageID # 22 ¶¶ 107-08 (alleging that Cardinal Health acted through Shaw)) The Court will therefore grant summary judgment in favor of Shaw as well as Cardinal Health. *See Bailey*, 643 F. App'x at 600.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Cardinal Health's motion for summary judgment (D.N. 29) is **GRANTED**. A separate judgment will be entered this date.

(2) Cardinal Health's motion to dismiss (D.N. 18) is **DENIED** as moot.

September 6, 2017

**David J. Hale, Judge**
**United States District Court**